**FLORIDA POWER & LIGHT COMPANY, Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 95–1093.

United States Court of Appeals, District of Columbia Circuit.

Argued April 22, 1998.

Decided June 26, 1998

Douglas H. Green argued the cause and filed the briefs for petitioner with whom Norman L. Rave, Jr. was on the brief.

Seth M. Barsky, Attorney, U.S. Department of Justice, argued the cause for respondent, with whom Lois J. Schiffer, Assistant Attorney General, and Jonathan Z. Cannon, General Counsel, Environmental Protection Agency, were on the brief.

Before: EDWARDS, Chief Judge, SENTELLE and GARLAND, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

Petitioner Florida Power and Light Company ("Florida P&L" or "the company") petitions for review of two statements made in the preamble to a proposed rule relating to the requirements a state must meet to be authorized to administer certain aspects of the Resource Conservation and Recovery Act of 1976, Pub.L. No. 94–580, 90 Stat. 2795 (1976) ("RCRA"). We dismiss the petition for lack of statutory jurisdiction because the preamble statements are not final regulations within the meaning of RCRA § 7006(a), 42 U.S.C. § 6976(a) (1994). Moreover, even assuming that the court otherwise had jurisdiction, it is clear that Florida P&L's claims are not ripe for review.

## I. BACKGROUND

### A. *Statutory and Regulatory Background*

Congress enacted the RCRA to address increasingly serious environmental and health dangers arising from waste generation, management, and disposal. Congress was particularly concerned with the management and disposal of "hazardous wastes," for which it provided comprehensive "cradle-to-grave" regulation in RCRA Subtitle C. *See* 42 U.S.C. §§ 6921–6934 (1982) (current version at 42 U.S.C. §§ 6921–6939e (1994)); *United Technologies Corp. v. EPA,* 821 F.2d 714, 716 (D.C.Cir.1987).

### 1. Interim Status of Waste Treatment Facilities

The RCRA requires facilities that treat, store, or dispose of hazardous waste to obtain a permit from either the United States Environmental Protection Agency ("EPA" or "the Agency") or an authorized state. 42 U.S.C. § 6925(a)-(c) (1994). Recognizing that EPA could not issue permits to all affected facilities before the RCRA's effective date, Congress provided that existing facilities meeting certain requirements could operate on an "interim status" basis until final agency action could be taken on a facility's permit application. 42 U.S.C. § 6925(e).

### 2. Corrective Action Authority

"As originally enacted, RCRA did not require permittees to take significant remedial action to correct past mismanagement of hazardous waste." *American Iron & Steel Inst. v. EPA,* 886 F.2d 390, 393 (D.C.Cir.1989) (internal quotation marks and citations omitted). In part to address the concern that releases from RCRA facilities posed a threat to human health and the environment, Congress amended the RCRA with the Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98–616, 98 Stat. 3221 (1984) ("HSW Amendments"). *Id.* In the HSW Amendments, Congress significantly expanded EPA's authority to require facilities to undertake "corrective action" to address hazardous releases at RCRA treatment, storage, and disposal facilities. With respect to permitted facilities, section 3004(u) provides that any permit issued to a facility after November 8, 1984 "shall require ... corrective action for all releases of hazardous waste or constituents from any solid waste management unit at a treatment, storage, or disposal facility seeking a permit under this subchapter, regardless of the time at which waste was placed in such unit." 42 U.S.C. § 6924(u). In section 3008(h), Congress provided EPA with corresponding authority to require corrective action at interim status facilities. *See* 42 U.S.C. § 6928(h).

### 3. State Authorization

Under the RCRA, EPA may authorize states to administer and enforce their

own hazardous waste programs within the state. 42 U.S.C. § 6926(b). EPA will approve a state's request for authorization if it determines, among other things, that the state's program is equivalent to and consistent with the federal one and provides for "adequate enforcement of compliance" with the RCRA's requirements. *Id.* Following authorization, EPA retains its full enforcement authority, although authorized states have primary enforcement responsibility. *See Waste Management of Illinois, Inc. v. EPA,* 945 F.2d 419, 420 (D.C.Cir.1991).

■ Florida received authorization to administer the "base" RCRA program in 1985. *See* 50 Fed.Reg. 3,908 (1985). This authorization gave Florida responsibility for permitting facilities and certain other aspects of the RCRA program. *Id.* at 3,908–09. However, Florida never has been authorized to administer any aspect of the corrective action program under RCRA § 3008(h), 42 U.S.C. § 6928(h). *See* 63 Fed.Reg. 2,896, 2,897 (1998). Accordingly, administration and enforcement of the corrective action program in Florida has been and remains the responsibility of EPA.

B. *Development of EPA Policy Pertaining to EPA's Corrective Action Authority*

1. The 1990 Proposed Rule

On July 27, 1990, EPA proposed regulations to govern the corrective action program and included in the preamble a discussion addressing several issues related to section 3008(h). 55 Fed.Reg. 30,798 (1990) ("1990 Proposed Rule"). In setting forth the background for the proposed rule, EPA explained that "[s]ection 3008(h) provides EPA with authority ... to require corrective action or other measures, as appropriate, when there is or has been a release of hazardous waste or hazardous constituents from a RCRA facility operating under interim status." *Id.* at 30,799. The preamble then noted that a "detailed discussion of the Agency's interpretation of the section 3008(h) authority was provided in a December 16, 1985 guidance memorandum entitled 'Interpretation of section 3008(h) of the Solid Waste Disposal Act.'" *Id.* at 30,800 (citing Memorandum from J. Winston Porter, Assistant Adminis-

trator, Office of Solid Waste and Emergency Response, dated December 16, 1985 (hereinafter "Porter Guidance"), *reprinted in* Joint Appendix ("J.A.") 24). The proposal's preamble also addressed the reach of EPA's section 3008(h) authority, stating that "[c]orrective action may be required under section 3008(h) whether the facility is operating (prior to receiving a permit) under interim status, *is closing or is closed under interim status,* has lost interim status, or failed to properly obtain interim status." *Id.* at 30,-855 (emphasis added).

EPA has promulgated only a few sections of its 1990 Proposed Rule in final form. *See* 58 Fed.Reg. 8,658 (1993). On May 1, 1996, EPA published an advance notice of proposed rulemaking outlining EPA's strategy for promulgating future regulations governing the corrective action process. *See* 61 Fed.Reg. 19,432 (1996).

2. The 1994 Proposed Rule

On November 8, 1994, as part of EPA's efforts to create a consistent approach to cleanups at RCRA permitted and interim status facilities, EPA proposed revisions to the requirements for state authorization. 59 Fed.Reg. 55,778 (1994) ("1994 Proposed Rule"). Since July 15, 1985, EPA has required states to have corrective action authority over permitted facilities comparable to EPA's section 3004(u) authority for the state to obtain authorization for that portion of the HSW Amendments corrective action program. *Id.* at 55,788. The 1994 Proposed Rule would have for the first time required states also to have corrective action authority at interim status facilities comparable to EPA's section 3008(h) authority to obtain state authorization. *Id.*

Florida P&L challenges two preamble statements in the 1994 Proposed Rule concerning requirements for authorization of state corrective action programs. The first statement recites EPA's interpretation that the RCRA's interim status corrective action provision, section 3008(h), 42 U.S.C. § 6928(h), authorizes EPA to respond to releases from "facilities that have, had, or should have had authorization to operate un-

der interim status." 59 Fed.Reg. at 55,789 (citing Porter Guidance). The second statement provides EPA's view that section 3008(h) enables EPA to respond to "releases of hazardous waste or hazardous constituents" at interim status facilities. *Id.*

EPA has yet to take final action on the 1994 Proposed Rule.

## C. *EPA Investigation of Florida P&L Facilities*

Until approximately 1988, Florida P&L operated surface impoundments for the management of corrosive hazardous wastes at nine different facilities in Florida. Each of these facilities had obtained interim status shortly after EPA's promulgation of RCRA hazardous waste regulations in 1980. According to Florida P&L, each of these interim status facilities was "clean closed" in conformance with 40 C.F.R. Part 264.

As part of its inspection and enforcement program, EPA Region 4 notified the company that it intended to conduct visual site inspections at several Florida P&L facilities. EPA officials at Region 4, with the consent of Florida P&L, have conducted these inspections at some, but not all, of Florida P&L's nine facilities. Although company officials have consented to EPA investigations, they have never agreed that EPA has the authority to pursue these actions. In particular, company officials have maintained that EPA has no authority under section 3008(h) to inspect the facilities in question. The parties have been engaged in negotiations over the last few years in an effort to resolve this and other issues. To date, EPA has not issued a RCRA § 3008(h) order to any Florida P&L facility.

## II. ANALYSIS

### A. *Finality*

■ Florida P&L seeks review of preamble statements in the 1994 Proposed Rule under RCRA § 7006(a), 42 U.S.C. § 6976(a). Section 7006(a) provides for judicial review of *final regulations* issued pursuant to the RCRA. 42 U.S.C. § 6976(a). This court has recently identified three criteria for determining when an EPA regulatory

action constitutes promulgation of regulations within the meaning of section 7006(a): (1) the Agency's own characterization of the action; (2) whether the Agency published the action in the Federal Register or the Code of Federal Regulations ("CFR"); and (3) whether the action has binding effects on either private parties or the Agency. *See American Portland Cement Alliance v. EPA,* 101 F.3d 772, 776 (D.C.Cir.1996); *see also Kennecott Utah Copper Corp. v. DOI,* 88 F.3d 1191, 1207 (D.C.Cir.1996) (interpreting "regulation" under an analogous judicial review provision as "a statement that has general applicability and that has the legal effect of binding the agency or other parties") (internal quotation marks and citations omitted).

■ Here, the Agency has never characterized the challenged statements as final or applied them as binding. While the statements were published in the Federal Register, *American Portland Cement* indicated that "the real dividing point between regulations and general statements of policy is publication in the Code of Federal Regulations." *American Portland Cement,* 101 F.3d at 776. In deciding that the regulatory determination in that case was not a final regulation for the purposes of judicial review under RCRA § 7006(a), 42 U.S.C. § 6976(a), the court found the fact that the regulatory determination had not been published in the CFR to be more important than that it had been published in the Federal Register. *See id.* at 776–77.

### 1. The Challenged Statements Have Never Been Characterized as a Final Rule

On its face, the action at issue is merely a *proposed,* not a final, rulemaking. Although the challenged statements are consistent with previous policy statements of EPA, the parties agree that the challenged preamble statements appear for the first time in a proposed rulemaking, and are not simply a reiteration of existing interpretive rules. Furthermore, there is nothing to indicate that EPA intended to promulgate a definitive rule concerning the scope of its section 3008(h) authority. Indeed, that EPA is still in the process of clarifying the scope of its

own corrective action authority is evidenced by the fact that it has yet to promulgate final rules on many of the issues addressed in the 1990 Proposed Rule.

### 2. EPA Has Not Applied the Challenged Statements as Binding

In addition, Florida P&L has failed to show that the challenged statements have any binding effects on either private parties or the Agency. Florida P&L claims that the preamble statements are "final interpretive rules" because EPA purportedly has applied the challenged statements as binding on the company. Significantly, however, Florida P&L does not claim that the preamble statements themselves had a binding effect on the company. Rather, Florida P&L relies on a September 30, 1994 letter from EPA Region 4 notifying the company of EPA's intention to conduct a visual site inspection at one of Florida P&L's facilities and a June 21, 1996 letter from EPA Region 4 responding to objections raised by the company to EPA's inspections at its facilities. *See* Pet. Br. at 11 & Appendix at 1, 10.

It is worth noting that the September 30, 1994 letter predates the challenged November 8, 1994 preamble statements. Thus, it is unclear how this EPA letter can be seen to apply statements that had yet to be published when the letter was sent.

Moreover, to the extent that both letters can be read as preliminary steps to taking enforcement action against Florida P&L pursuant to section 3008(h), the enforcement action is being taken by EPA directly, and not by the state of Florida pursuant to a state corrective action program authorized under the challenged proposed regulations. Thus, if anything, the letters follow from EPA's understanding of its section 3008(h) authority as explained in the 1990 Proposed Rule, which discusses EPA's authority to enforce section 3008(h), not the EPA's proposed requirements that states have similar authority in order to be authorized to enforce section 3008(h), which is the topic of the 1994 Proposed Rule challenged here. If Florida P&L's petition were to be construed as a challenge to the 1990 Proposed Rule, it would be time-barred. *See* RCRA § 7006(a)(1), 42

U.S.C. § 6976(a)(1) (requiring petitions for review of final regulations promulgated pursuant to the RCRA to be "filed within ninety days"); *American Iron & Steel,* 886 F.2d at 397–98 (dismissing for lack of jurisdiction late-filed challenge to RCRA regulations).

In any event, these letters, without more, have no binding effect on Florida P&L. *See FTC v. Standard Oil Co.,* 449 U.S. 232, 242–43, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (agency action that only serves to initiate proceedings is not binding); *Air California v. DOT,* 654 F.2d 616, 620–21 (9th Cir.1981) (agency letter alleging statutory violations and warning of possible injunctive and civil penalty remedies did not constitute final agency action). Florida P&L asserts that EPA "has coerced [Florida P&L] into performing corrective action under the threat of enforcement of [the challenged statements]." Reply Br. at 7. It describes its present "predicament" as one in which it "must voluntarily comply with undertaking a corrective action program it believes to be unlawful or face the imposition of an enforcement order and associated civil penalties." *Id.* at 13. However, Florida P&L does not and cannot deny that it could choose not to permit EPA to access its facilities, in which case EPA would have to decide whether to issue a 3008(h) order against Florida P&L or move on to other enforcement priorities.

If EPA issued a 3008(h) order against Florida P&L, the company would have ample opportunity to raise its objections to EPA's interpretation of its section 3008(h) authority in administrative and, ultimately, judicial proceedings challenging the order. EPA regulations provide for informal adjudication prior to the issuance of a final corrective action order. *See* 40 C.F.R. Part 24; *Chemical Waste Management, Inc. v. EPA,* 873 F.2d 1477, 1478 (D.C.Cir.1989) (upholding informal hearing procedures contained in 40 C.F.R. Part 24). Even after becoming final, however, a RCRA § 3008(h) corrective action order is not self-executing. To compel compliance with an order, the EPA must seek appropriate relief through either a civil action or in an administrative proceeding before an administrative law judge appealable to EPA's Environmental Appeals Board.

*See* RCRA § 3008(a), (h), 42 U.S.C. § 6928(a), (h); 40 C.F.R. Parts 22, 24. A decision of the Environmental Appeals Board concerning a corrective action order would presumptively be reviewable under the Administrative Procedure Act ("APA"), as there is no indication that Congress intended to preclude review of such decisions or otherwise commit such decisions solely to agency discretion. *See* 5 U.S.C. § 701(a) (agency actions are judicially reviewable "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law"); *Natural Resources Defense Council, Inc. v. SEC,* 606 F.2d 1031, 1043 (D.C.Cir.1979) (APA "creates a strong presumption of reviewability that can be rebutted only by a clear showing that judicial review would be inappropriate").

The cases on which Florida P&L relies in support of its contention that the challenged preamble statements are reviewable by this court in the present context are clearly distinguishable. In *McLouth Steel Products Corp. v. Thomas,* 838 F.2d 1317 (D.C.Cir. 1988), the binding nature of the policy statement at issue was exhibited through EPA's denial of the petitioner's petition for delisting, a formal agency action similar to a RCRA order. No equivalent agency action has been taken to date in the instant case. *JEM Broadcasting Co. v. FCC,* 22 F.3d 320 (D.C.Cir.1994), involved judicial review of final agency action (summary dismissal of a license application) and was not construed as review of a regulation or rule—in fact, the *JEM* court held that the petitioner's attempt to challenge the rule providing the basis for dismissal in the context of the adjudication was time-barred. *See* 22 F.3d at 324; *see also id.* at 325 (distinguishing cases in which earlier challenge to rule found to be unripe). The central issue in *Ciba–Geigy Corp. v. EPA,* 801 F.2d 430 (D.C.Cir.1986) was what procedures the agency must follow before imposing penalties on a regulated entity. In contrast, in the instant case, Florida P&L is clearly entitled to challenge the EPA's alleged interpretation of its corrective action authority under RCRA § 3008(h) in an adjudicatory procedure before any penalties could be enforced against Florida P&L pursuant to this authority. In *Syncor Int'l*

*Corp. v. Shalala,* 127 F.3d 90 (D.C.Cir.1997), the court addressed whether the policy statement at issue was an interpretive rule subject to the governing statute's notice and comment rulemaking requirements. Here, Florida P&L does not urge that the challenged preamble statements were not subject to notice and comment—indeed, the company offered comments on the proposed rule—and thus *Syncor* is inapposite. Finally, in *Edison Electric Inst. v. EPA,* 996 F.2d 326 (D.C.Cir. 1993), the court's decision that the policy statement at issue was reviewable hinged on a determination that the challenged statement effectively reopened a prior regulation and, thus, the challenge was really to the substance of the prior final regulation. *See* 996 F.2d at 331–32 (explaining "reopener doctrine"). Florida P&L does not invoke the reopener doctrine here.

■ Florida P&L also attempts to rely on *Kennecott.* In fact, this case supports EPA's position, not that of Florida P&L. In *Kennecott,* this court held that "a preamble may under some circumstances be reviewable." 88 F.3d at 1222. However, where the petitioners "have not demonstrated that the [challenged] preamble has a direct and immediate rather than a distant and speculative impact upon them," the court "must await a concrete case where we can probe the limits of the rule in the context of a live controversy involving actual events." *Id.* at 1223. The court reasoned:

> Unless and until [the agency] invokes the preamble in an attempt to affect the outcome of a real dispute, there is little need for and no factual basis to inform our inquiry into its validity. Moreover, by awaiting a concrete case, we will then be able to ascertain with assurance that [the agency] intended to bind a party and that the party was thereby aggrieved.

*Id.* Thus, *Kennecott* demonstrates how, in cases such as this, "the issues of reviewability and ripeness converge." *Id.*

### B. *Ripeness*

■ Even assuming that Florida P&L were challenging a final interpretive rule, it is clear that its claims are not ripe for review. The ripeness doctrine "represents a

prudential attempt to balance the interests of the court and the agency in delaying review against the petitioner's interest in prompt consideration of allegedly unlawful agency action." *Cronin v. FAA,* 73 F.3d 1126, 1131 (D.C.Cir.1996) (internal quotation marks and citations omitted). The Supreme Court established the framework for reaching this balance in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), where the Court set forth a two-pronged test that requires a reviewing court first to evaluate the "fitness of the issues for judicial decision." *Id.* at 149, 87 S.Ct. 1507. When a challenged decision is not "fit" for review, the petitioner must show "hardship" in order to overcome a claim of lack of ripeness. *See id.; City of Houston v. HUD,* 24 F.3d 1421, 1430–31 & n. 9 (D.C.Cir.1994). The claims of Florida P&L fail the test of ripeness.

 Under the fitness prong, we inquire into whether the disputed claims raise purely legal, as opposed to factual, questions and "whether the court or the agency would benefit from postponing review until the policy in question has sufficiently 'crystallized.'" *Cronin,* 73 F.3d at 1131. "The court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting militate in favor of postponing review if, for example, the court finds that resolution of the dispute is likely to prove unnecessary or that the court's deliberations might benefit from letting the question arise in some more concrete form." *Id.* (internal quotation marks and citations omitted). The present petition for review is not based on crystallized EPA interpretations, but, rather, on Florida P&L's own interpretations of the preamble statements and what could happen if those statements—as interpreted by Florida P&L—are applied to the company in an as-yet-to-be-issued section 3008(h) order. The challenged rule is unclear with regard to whether or not it applies to "clean-closed" facilities, and EPA has yet to issue or defend a formal order applying this rule to such facilities. Since it remains uncertain whether, or on what grounds, EPA would even apply this rule to clean-closed facilities, the specific question raised by Florida P&L is not fit for review at this time.

In light of the lack of fitness of its claims, Florida P&L must demonstrate that postponing review will cause the company "hardship" in order to overcome a claim of lack of ripeness and obtain review of the challenged rule at this time. *See City of Houston,* 24 F.3d at 1431 n. 9. Florida P&L is unable to demonstrate hardship because the company suffers no harm unless and until EPA or an authorized state issues a 3008(h) corrective action order against it. *See W.R. Grace & Co. v. EPA,* 959 F.2d 360, 365–67 (1st Cir.1992) (noting lack of ripeness where EPA has yet to take any final action under RCRA corrective action process). As explained above, in the event that the EPA takes such action, Florida P&L will have an opportunity to make the same arguments raised here in either district court or administrative proceedings. Civil penalties cannot be imposed on Florida P&L unless it chooses to disregard a corrective action order against it. The only conceivable hardship Florida P&L will endure as a result of postponement is the burden of participating in further administrative and judicial proceedings. Such claims, however, do not constitute sufficient hardship for the purposes of ripeness. *Cronin,* 73 F.3d at 1133 (challenge is unripe where complaining party is free to challenge agency's regulations in context of specific enforcement action). Thus, Florida P&L's claims are not ripe for review at this time.

### III. CONCLUSION

For the foregoing reasons, the petition for review is dismissed.

*So ordered.*