PILLARD, Circuit Judge,
concurring in Part I and concurring in the judgment:
I join Part I of the majority opinion. I write separately as to Parts II and III because, although I entirely agree that both the antitrust and First Amendment claims fail, we are a court of limited jurisdiction obligated to decide the Article III standing question before assessing the merits of the claims. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 340-42, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006); Friends of the Earth, Inc. v. Laidlaw Envt’l Servs., Inc., 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Despite its misleading name, “statutory standing” is not jurisdictional in the Article III sense, as the Supreme Court made clear in Lexmark Int'l, Inc. v. Static Control Components, Inc., _ U.S. _, 134 S.Ct. 1377, 1387 & n.4, 188 L.Ed.2d 392 (2014). See also Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 528 & nn.17-18, 545-46, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (dismissing case for lack of antitrust injury only after assuming the complaint stated a valid antitrust claim). We thus cannot sidestep the Article III standing inquiry and dismiss instead on statutory “antitrust standing” grounds. “It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, ie., the courts’ statutory or constitutional power to adjudicate the case.” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Because I would dismiss both claims under Rule 12(b)(6) only after determining Article III standing, I concur in the judgment.
The majority’s exertions to avoid addressing Article III standing in the ordinary course are puzzling, given that plaintiffs’ standing appears to be straightforward under the classic injury-causation-redressability formulation. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The majority does not dispute that the plaintiffs (“Johnson and Stein”) identify concrete and particularized injury from having been excluded from the 2012 presidential and vice-presidential debates. Maj. Op. at 981 (acknowledging that Johnson and Stein’s “injuries are clearly pleaded in the Complaint” and are “particularized”). The court stops short of holding that Johnson and Stein’s injury is fairly traceable to the defendants’ actions, however, see id. at 982 (suggesting they have “not shown any injury caused by the antitrust violation”), and also denies that, in the (admittedly unlikely) event that they were to succeed on the merits of *985 their claims, plaintiffs’ injuries would be redressable.
Plaintiffs’ allegations satisfy the latter two standing inquiries as readily as they do the first. Johnson and Stein allege that the challenged 15 per cent polled-support requirement was the direct cause of their injury. Had the MOU not imposed that 15 per cent threshold, they would have qualified to participate. See Compl. ¶83, J.A. 48. Those allegations suffice at the pleading stage to state causation. See Attias v. CareFirst, Inc., 865 F.3d 620, 629 (D.C. Cir. 2017) (“Article III standing does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs’ injuries; it requires only that those injuries be ‘fairly traceable’ to the defendant.”). And the redressability of Johnson and Stein’s alleged injury flows from their theory of causation. If they were to prevail, the court could award compensation for the injuries their exclusion caused. See Sprint Commc’ns Co. v. APCC Servs., Inc., 554 U.S. 269, 286-87, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008); see also Cardenas v. Smith, 733 F.2d 909, 914 (D.C. Cir. 1984) (“A damage claim, by definition, presents a means to redress an injury.”); Renal Physicians Ass’n v. U.S. Dep’t of Health and Human Servs., 489 F.3d 1267, 1276 (D.C. Cir. 2007) (“[A]t the pleading stage, a party must make factual allegations showing that the relief it seeks will be likely to redress its injury.”).
It is that last element of standing— redressability — that the majority cannot swallow, as it anticipates that any court-ordered relief would violate the Commission’s First Amendment rights. Maj. Op. at 981-82. I assume the court is correct on that point. See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc., 515 U.S. 557, 573-74, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995); Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241, 258, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). I disagree only with treating the merits of a First Amendment defense not yet in issue as an obstacle to standing. The majority cites a passing suggestion in Perot v. FEC that, if the court were to enjoin presidential debates or the Commission on Presidential Debates’ (CPD’s) choice of participants, “there would be a substantial argument that the court would itself violate the CPD’s First Amendment rights.” 97 F.3d 553, 559 (D.C. Cir. 1996). Again, I assume as much. But we did not identify the First Amendment as an obstacle to standing in Perot — nor, for example, did the Supreme Court in Hurley or Tornillo.
A standing inquiry, especially at the motion-to-dismiss stage, should not anticipate the merits — neither of the claim nor, especially, of a potential defense. A conclusion that appellants’ claims cannot be redressed because of a potential First Amendment obstacle would be impermissibly “deciding the merits under the guise of determining the plaintiffs’] standing.” Information Handling Servs., Inc. v. Defense Automated Printing Servs., 338 F.3d 1024, 1030 (D.C. Cir. 2003); see Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (observing that “standing in no way depends on the merits' of the plaintiffs contention that particular conduct is illegal”); In re Navy Chaplaincy, 534 F.3d 756, 760 (D.C. Cir. 2008) (“In reviewing the standing question, we must be ‘careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.’ ”). Redressability, like any other aspect of jurisdiction, “is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.” Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The majority explains its order of operations by invoking pre-Lexmark cases *986 for dismissal on statutory standing grounds “in rare cases where [the], jurisdictional, Article III ■ ■ standing inquiry yields grave constitutional doubt.” Maj. Op. at 982. But, as noted above, the First Amendment concern is not even part of the Article-III standing inquiry; Johnson and Stein’s standing itself raises no grave or doubtful constitutional question. I would therefore hold that Plaintiffs have Article III standing to bring their antitrust claims before I would dismiss them on their merits.
The majority dismisses the complaint on antitrust standing grounds because plaintiffs do not allege injury to competition, but rather identify harms to themselves that are “simply not those contemplated by the antitrust laws.” Maj. Op. at 983. I agree that the antitrust claim fatally fails to tie the major party candidates’ alleged collusion to any anticompetitive ham to an identified commercial market or market participant. The complaint does not articulate a theory under which trade or commerce has been restrained by the MOU. It therefore falls outside the ambit of antitrust regulation, the aim of which is to promote economic competition. See I Phillip E. Areeda et al., Antitrust Law ¶ 100a at 3-4 (4th ed, 2014); cf. United States v. Topco Assocs., Inc., 405 U.S. 596, 610, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972) (“Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise.”); N. Pac. Ry. Co. v. United States, 356 U.S. 1, 4, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958) (describing Sherman Act as “comprehensive charter of economic liberty”).
The complaint refers to various “markets,” but the defining competitive dynamic of the activities it so labels is political. It alleges, for instance, collusion in the “presidential debates market,” the “presidential campaign market,” the “electoral politics market,” and the “presidential candidates market.” Compl. ¶¶ 1, 11, J.A. 15, 18. That flaw is not .repaired ;by the complaint’s allegations of various ways in which U.S. presidential campaigns involve a lot of money. The televised debates are expensive to stage, generate revenues for venues and their host localities, and can boost the fundraising of successful participants. See id. ¶¶ 35-41, J.A. 29-33. But “the antitrust laws should hot regulate political activities ‘simply because those activities have a commercial impact.’” Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 507, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988) (quoting Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 141, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)). Nor is antitrust scrutiny triggered every time someone in an activity that involves or affects commerce contends that others have agreed to act in a way that fails equally to enhance the claimant’s ac-céss to money. Not every joint business venture is an antitrust violation. See Associated Press v. United States, 326 U.S. 1, 23, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945) (Douglas, J., concurring). To be actionable, an agreement must unduly restrain or monopolize trade or commerce. See Standard Oil Co. v. United States, 221 U.S. 1, 59-62, 31 S.Ct. 502, 55 L.Ed. 619 (1911).
The majority and I agree that the complaint fails for want of any connection between the major party candidates’ alleged collusion in planning and restricting their joint debates and anticompetitive harm to an identified commercial market. But I disagree that the deficiency is only one of antitrust standing. Because the claim would equally be-deficient if the.plaintiff were the- government, which need not prove statutory standing, I would affirm the dismissal as a failure to state a cognizable violation rather than as a statutory standing shortfall. See Areeda, Antitrust Law ¶ 335f at 91.
*987 Part III of the opinion, dismissing Johnson and Stein’s First Amendment challenge to their exclusion, also puts the merits cart before the Article III standing horse. I would dismiss this claim, too, for failure to state acclaim rather than for want of standing. The constitutional allegations plainly fail the established “state action” requirement. “It is fundamental that the First Amendment prohibits governmental infringement on the right of free speech.” Rendell-Baker v. Kohn, 457 U.S. 830, 837, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (emphasis added). Moreover, a candidate debate is a forum that, even if run by a public entity, could still be nonpublic and impose reasonable, viewpoint-neutral access restrictions without running afoul of the First Amendment. See Arkansas Educ. Tel. Comm’n v. Forbes, 523 U.S. 666, 677-78, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998).
Both of plaintiffs’ claims lack merit. Before so deciding, however, we must determine whether plaintiffs have standing. To do so, we must take the allegations of the complaint as true and assume the validity of the plaintiffs’ legal theory. Mendoza v. Perez, 754 F.3d 1002, 1010 (D.C. Cir. 2014) (citing Holistic Candlers and Consumers Ass’n v. FDA, 664 F.3d 940, 943 (D.C. Cir. 2012)). Under those requisite assumptions (however ultimately unavailing the claims might be), plaintiffs here have standing to sue. I join Part I but, because this case presents no reason to “pretermit the jurisdictional threshold,” Maj. Op. at 984, I concur only in the judgment.