# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 7, 2019　　　　　Decided April 7, 2020

No. 18-1167

SIERRA CLUB,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY AND ANDREW
WHEELER, ADMINISTRATOR, U.S. ENVIRONMENTAL
PROTECTION AGENCY,
RESPONDENTS

AIR PERMITTING FORUM, ET AL.,
INTERVENORS

On Petition for Review
of an Administration Action by the
United States Environmental Protection Agency

*Gordon Sommers* argued the cause for petitioner. With him on the briefs was *Seth L. Johnson*. *David S. Baron* entered an appearance.

*Brian H. Lynk*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief were *Jeffrey Bossert Clark*, Assistant Attorney General, *Jonathan*

*D. Brightbill*, Deputy Assistant Attorney General, *Brian L. Doster*, Assistant General Counsel, U.S. Environmental Protection Agency, and *Mark M. Kataoka*, Attorney.

*Makram B. Jaber*, *Lucinda Minton Langworthy*, *Andrew D. Knudsen*, *Shannon S. Broome*, *Charles H. Knauss*, *Steven P. Lehotsky*, *Michael B. Schon*, *Leslie A. Hulse*, and *Richard S. Moskowitz* were on the brief for intervenors-respondents.

*Megan H. Berge*, *Scott A. Keller*, and *Jared R. Wigginton* were on the brief for *amicus curiae* American Petroleum Institute in support of respondents U.S. Environmental Protection Agency, et al., and denial of petition for review.

Before: GARLAND and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Concurring opinion by *Circuit Judge* WILKINS.

Concurring opinion by *Senior Circuit Judge* RANDOLPH.

WILKINS, *Circuit Judge*: This case again presents the seemingly labyrinthine question of whether an agency action is final for the purposes of judicial review. The agency action before us is a document titled "Guidance on Significant Impact Levels for Ozone and Fine Particles in the Prevention of Significant Deterioration Permitting Program" (the "SILs Guidance") published on April 17, 2018 by the U.S. Environmental Protection Agency ("EPA"), authored by Peter Tsirigotis, Director of EPA's Office of Air Quality Planning and Standards.

Petitioner Sierra Club contends that we can and should review the SILs Guidance because it is final agency action and prudentially ripe. Respondent EPA counters that this Court lacks jurisdiction over the SILs Guidance because it is not final agency action, and alternatively, that we should not review it because it is not prudentially ripe. Although both parties advance arguments on the merits of EPA's interpretation of 42 U.S.C. § 7475(a)(3) in the SILs Guidance, for the reasons detailed herein, we do not reach those issues. We hold that the SILs Guidance is not final agency action subject to review by this Court under the Clean Air Act ("CAA") as it does not determine rights or obligations and does not effectuate direct or appreciable legal consequences as understood by the finality inquiry. *See* 42 U.S.C. § 7607(b)(1). As such, we dismiss the petition for lack of subject-matter jurisdiction under the CAA. We express no opinion as to ripeness or the merits.

## I.

We turn first to the CAA provisions and EPA regulations that govern the SILs Guidance.

Congress enacted the Clean Air Amendments of the CAA in 1970 as "a comprehensive national program that made the States and the Federal Government partners in the struggle against air pollution." *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). The amendments require EPA to promulgate national ambient air quality standards ("NAAQS") that limit the concentration of certain pollutants allowable in the ambient air people breathe. *See* 42 U.S.C. § 7409(a)(1). For each pollutant, primary and secondary standards must be set at levels "requisite to protect the public health" and "the public welfare," respectively. *Id.* § 7409(b). Each state develops its own state implementation plan ("SIP")

containing emission limits and other control measures to enforce the NAAQS within the state. *Id.* §§ 7407(a), 7410(a)(1)-(2).

In 1977, Congress amended the CAA to create the Prevention of Significant Deterioration ("PSD") program. *See* 42 U.S.C. § 7470-79. The PSD program requires major emitting facilities[1] to obtain a permit "setting forth emission limitations" for a facility prior to construction. 42 U.S.C. § 7475(a)(1); *see Ala. Power Co. v. Costle*, 636 F.2d 323, 378 (D.C. Cir. 1979). The program requires any applicant for a PSD permit to demonstrate that new emissions from the proposed project "will not cause, or contribute to, air pollution in excess of any (A) maximum allowable increase or maximum allowable concentration for any pollutant in any area to which this part applies more than one time per year, [or] (B) national ambient air quality standard in any air quality control region[.]" 42 U.S.C. § 7475(a)(3). The "maximum allowable increase" of an air pollutant is a marginal level of increase above the defined baseline concentration and is known as the "increment." 75 Fed. Reg. 64,864, 64,868 (Oct. 20, 2010).

Although the permitting process is primarily implemented at the state level, with states issuing preconstruction permits in accordance with their SIPs and federal minimum standards, *see* 42 U.S.C. § 7410(a)(1)-(2), (l), section 7475(e)(3) authorizes EPA to promulgate regulations regarding the ambient air quality analysis required under the permit application review. *Id.* § 7475(e)(3)(D).

---

[1] A "major emitting facility" is defined as any stationary source that emits or has the potential to emit 100 or 250 tons per year (depending on the type of source) of any air pollutant. 42 U.S.C. § 7479(l); *see also id.* § 7479(2)(C) (governing modifications).

Pursuant to this power, in 1987 EPA promulgated a regulation outlining a set of values for states to use in determining what level of emissions does "cause or contribute to" a violation under section 7475(a)(3). *See* 40 C.F.R. § 51.165(b)(2); 52 Fed. Reg. 24,672, 24,713 (July 1, 1987). The air quality concentration values specified in the regulation have become known as "significant impact levels," or SILs, when used as part of an air quality demonstration in a permit application. *See* SILs Guidance at 9.

In 2010, EPA attempted to codify these uses of SILs for certain harmful air pollutants, including fine particulate matter ("PM2.5"), by amending paragraph (k)(2) of its regulations at 40 C.F.R. §§ 51.166 and 52.21 and by incorporating PM2.5 values into its preexisting table of significance values at 40 C.F.R. § 51.165(b)(2). *See* 75 Fed. Reg. at 64,864, 64,886, 64,902. However, after a petition for review was filed, EPA asked this Court to vacate and remand the (k)(2) paragraphs of both regulations so EPA could address flaws it had recognized during the course of litigation. *See Sierra Club v. EPA*, 705 F.3d 458, 463-64 (D.C. Cir. 2013). In 2013 the Court vacated the (k)(2) paragraphs, stating that, on remand, "the EPA [might] promulgate regulations that do not include SILs or do include SILs that do not allow the construction or modification of a source to evade the requirement of the Act as do the SILs in the current rule." *Id.* at 464.

Following the remand, EPA began developing a new rule to address the flaws identified in the 2010 rulemaking, and on August 1, 2016, posted online and sought informal public comment on a new draft of guidance on the use of SILs. On April 17, 2018, EPA issued the SILs Guidance at issue in this case with revisions made in response to the public comments. The SILs Guidance expressed EPA's view that permitting authorities have the discretion to find sources applying for

permits and that have individually small impacts exempt from the demonstration required by section 7475(a)(3). SILs Guidance at 17. Based on statistical analyses and technical approaches, the Guidance outlined what the agency believes are individually small impacts by identifying recommended, non-binding SIL values for the PM2.5 and ozone NAAQS, and for the PM2.5 increments. *Id.* at 15-17. The SILs Guidance then explained that if a proposed source's projected maximum impact is below the corresponding SIL value, that "generally may be considered to be a sufficient demonstration that the proposed source will not cause or contribute to a violation of the NAAQS." *Id.* at 17. Permitting authorities may use the nationally applicable SILs established in the SILs Guidance, but also "have discretion to develop their own SIL values" using EPA's methodology as a model and provided the values are properly supported in the record for each permitting action or decision in which they are used. *Id.* at 3.

Essentially, rather than requiring every PSD applicant to conduct a full cumulative impact analysis, if a preliminary analysis shows "a proposed source's maximum impact will be below the corresponding SIL value," EPA is open to a finding by the state permitting authority that such an impact "will not cause or contribute to a violation of the applicable NAAQS or PSD increment." *Id.* at 17. Furthermore, in what EPA refers to as a "culpability analysis," if a cumulative impact analysis is done anyway and "predicts a NAAQS violation," a source whose contribution to the violation is less than the SIL for a given pollutant may be considered "not culpable for" the violation under the Guidance. *Id.* at 18. Permitting authorities retain the ability to require additional information, and have discretion to find that even if a proposed source's impact is below the relevant SIL value, there has not been a sufficient demonstration that the "proposed source will not cause or contribute to a violation." *Id.* The SILs Guidance

also requires that "[t]he case-by-case use of SIL values should be justified in the record for each permit," and that the record for any permitting decision using a SIL recommended in the Guidance should fully incorporate the information contained in the Guidance, including the technical and legal documents used in the permitting process. *Id.* at 19.

In the SILs Guidance, EPA described the document as the first of a two-step approach, explaining it hoped to "first obtain experience with the application of these values in the permitting program before establishing a generally applicable rule." *Id.* at 2. EPA explained that after seeing how "permitting authorities use their discretion to apply and justify the application of the SIL values identified" in the Guidance, the agency would "assess, refine and, as appropriate, codify SIL values and specific applications of those values in a future, potentially binding rulemaking." *Id.* at 3.

## II.

Section 307(b)(1) of the Clean Air Act, titled "Administrative proceedings and judicial review," provides, in relevant part:

> A petition for review of action of the Administrator in promulgating [certain enumerated nationally applicable actions], or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia.

42 U.S.C. § 7607(b)(1).

As the Supreme Court made clear in *Harrison v. PPG Industries, Inc.*, section 307(b)(1) is a "conferral of jurisdiction upon the courts of appeals[.]" 446 U.S. 578, 593 (1980). It is also a venue provision that evinces Congress' clear intent that "'any nationally applicable regulations promulgated by the Administrator under the [CAA can] be reviewed only in the U.S. Court of Appeals for the District of Columbia.'" *Id.* at 590 (quoting H.R. Rep. No. 95–294, pp. 323-324 (1977), which explains that the Committee agreed with certain venue proposals of the Administrative Conference of the United States also to this effect.); *see also* 41 Fed. Reg. 56,767, 57,768 (Dec. 30, 1976) (stating the Administrative Conference's view that "all such national standards" under the CAA shall be reviewed "in the Court of Appeals for the District of Columbia Circuit"). However, this Court emphasized in *Dalton Trucking v. EPA* that "under section 307(b)(1), subject matter jurisdiction and venue are not coterminous." 808 F.3d 875, 879 (D.C. Cir. 2015). That is, just because an agency action may have national applicability does not mean it is final such that it can be reviewed immediately by this Court – and vice versa.

Before explaining why the SILs Guidance is not final agency action, we pause to reiterate the proper test for finality.

In *United States Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016), the Supreme Court affirmed that the familiar two-prong test laid out in *Bennett v. Spear*, 520 U.S. 154 (1997), "remains finality's touchstone." *See also Cal. Cmtys. Against Toxics*, 934 F.3d at 635 (citations omitted). Under this test, first, the action must "mark the consummation of the agency's decisionmaking process . . . . And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."

*Bennett*, 520 U.S. at 177-78 (citations and internal quotation marks omitted). Each prong of *Bennett* "must be satisfied independently for agency action to be final[.]" *Soundboard Ass'n*, v. *FTC*, 888 F.3d 1261, 1267 (D.C. Cir 2018). Additionally, "when assessing the nature of an agency action, . . . courts should resist the temptation to define the action by comparing it to superficially similar actions in the caselaw. Rather, courts should take as their NorthStar the unique constellation of statutes and regulations that govern the action at issue." *Cal. Cmtys. Against Toxics*, 934 F.3d at 631.

Addressing prong one, Petitioner argues the agency's "intention to consider subsequently amending in the Federal Register the decisions it already definitively made in the SILs Guidance does not render those decisions non-final[.]" Reply Br. at 5 (citing *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1006 (D.C. Cir. 2014)). They point out the agency "took comments, made revisions, and produced a definitive interpretation of the statute," arguing those actions marked the consummation of EPA's decisionmaking. *Id.* (citing *Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 478-79 (2001)).

Respondent argues the SILs Guidance is not the consummation of the agency's process, pointing to the document's disclaimer that it is "neither a final determination nor a binding regulation." SILs Guidance at 19. EPA argues the Guidance explicitly states that its issuance is only phase one of a two-step process the agency will be undertaking in response to the Court's partial vacatur and remand of the 2010 rule. *Id.* at 2. Finally, EPA points to its Fall 2018 regulatory agenda, which states that the Guidance was published as a first step and that "[b]ased on the information gathered from the implementation of [the SILs Guidance] by the permitting

authorities, EPA will complete a rulemaking action, as appropriate." J.A. 874.

The parties also disagree whether the SILs Guidance has "direct and appreciable legal consequences" as required under prong two of *Bennett*. *See* 520 U.S. at 178. Petitioner argues the Guidance has "immediate consequences" as it allows sources to receive permits "even where it is demonstrated they will cause, or contribute to, a violation of the NAAQS or increments – so long as their impact is below a SIL." Pet'r's Br. at 2, 4. They also argue the SILs Guidance resolves the "purely legal" question of whether permitting authorities are authorized to exempt small air quality impacts under 42 U.S.C. § 7475(a)(3) and expresses EPA's definitive position on this question of statutory interpretation. *Id.* at 3 (internal citations and quotations omitted)). They assert the SILs Guidance has an "immediate and significant" effect on how permitting authorities interpret the PSD permitting requirements and will "burden Sierra Club members with additional pollution exposure." *Id.* (citing *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011)). Finally, Petitioners point to statements by one of their standing declarants asserting that permitting authorities have begun relying on the proposed and final SILs Guidance. *Id.* (citing Declaration of Mary Anne Hitt at ¶ 22).

EPA counters that the SILs Guidance is not final agency action as it "does not create a new and binding legal regime." EPA Br. at 29. They argue the SILs Guidance does not represent a departure from a prior legal approach as "SILs have been used for decades, consistent with EPA regulations." *Id.* at 23. And that even if the SILs Guidance does break new ground, the finality of a legal interpretation does not turn solely on whether it is "new" but whether permitting authorities are "required to adopt or implement the

interpretation." *Id.* at 28. Second, they argue "the Guidance is *not* binding in any particular permit application review, has no legal effect, and does not substitute for or reduce" individual permitting authorities' discretion. *Id.* at 24. They argue the document merely provides technical and legal advice and that authorities retain "discretion to use other values that may be justified separately," including values lower than those EPA recommends; or they may elect not to use SILs at all. *Id.* at 30 (quoting SILs Guidance at 19-20). In response to the Petitioner's specific examples in the Hitt Declaration, EPA responds that "Petitioner does not show that the Guidance is written or has been applied in a binding manner," *id.* at 27, and the fact that some permitting authorities may have chosen to use the Guidance does not establish that it is legally binding overall, *id.* at 32. Finally, they argue the SILs Guidance does not authorize a determination that any specific proposed source will not cause or contribute to a violation because the legal requirements of the CAA and other EPA regulations, including the "demonstration" requirement of 42 U.S.C. § 7475(a)(3), remain wholly unchanged. *Id.* at 27.

Whether an agency action has "direct and appreciable legal consequences" under the second prong of *Bennett* is a "'pragmatic'" inquiry. *Hawkes*, 136 S. Ct. at 1815 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). And as we recently emphasized, courts should "make prong-two determinations based on the concrete consequences an agency action has or does not have as a result of the specific statutes and regulations that govern it." *Cal. Cmtys. Against Toxics*, 934 F.3d at 637. When deciding whether guidance statements meet prong two, this Court has considered factors including: (1) "the actual legal effect (or lack thereof) of the agency action in question on regulated entities"; (2) "the agency's characterization of the guidance"; and (3) "whether the

agency has applied the guidance as if it were binding on regulated parties." *National Mining Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014).

In *Hawkes*, the Court held, in part, that the agency determination at issue had direct and appreciable legal consequences (or actual legal effect) because if petitioners failed to heed the determination they did so at the risk of significant criminal and civil penalties under the statutory regime. 136 S. Ct. at 1815. *Hawkes* relied on a long line of cases illustrating a pragmatic approach to finality by focusing on how agency pronouncements actually affect regulated entities. *Id.* (citing *Sackett v. EPA*, 566 U.S. 120, 126 (2012) (holding that the agency action at issue satisfied *Bennett* prong two because it exposed petitioners to double penalties in a future enforcement proceeding and limited their ability to obtain a certain type of permit); *Abbott Labs.*, 387 U.S. at 152 (holding that the action at issue had a "sufficiently direct and immediate" impact on petitioners, such that judicial review was appropriate, because noncompliance risked "serious criminal and civil penalties"); *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956) (same)).

We have continued to affirm this approach, most recently in *Valero Energy Corporation v. EPA*, 927 F.3d 532 (D.C. Cir. 2019) and *California Communities*, 934 F.3d at 637. In *Valero*, we held, in part, that after analyzing the letter in question under the relevant statutory regime (1) the guidance imposed no obligations, prohibitions, or restrictions; (2) it put no party to the choice between costly compliance and the risk of a penalty of any sort; (3) EPA acknowledged at oral argument that the guidance had no independent legal authority; and (4) the relevant statute provided regulated parties a mechanism by which to challenge any EPA action

that was premised on the statutory interpretation that the guidance advanced.  927 F.3d at 536-39.

In *California Communities*, we found, in part, that the memo at issue was not final where (1) neither EPA nor regulated sources could rely on it as independently authoritative in any proceeding; (2) state permitting authorities faced no penalty or liability of any sort in ignoring it; and (3) state permitting authorities and regulatory beneficiaries had clear avenues by which to challenge a permitting decision adopting the reasoning of the memo.  934 F.3d at 638.

Assessing the SILs Guidance under *Hawkes* and in accordance with *Valero* and *California Communities*, we find it is not final agency action.  Given the specific nature of the statutory regime, the SILs Guidance imposes no obligations, prohibitions or restrictions on regulated entities, does not subject them to new penalties or enforcement risks, preserves the discretion of permitting authorities, requires any permitting decision relying on the Guidance be supported with a robust record, and does not prevent challenges to individual permitting decisions.  The SILs Guidance is *not sufficient* to support a permitting decision – simply quoting the SILs Guidance is not enough to justify a permitting decision without more evidence in the record, including technical and legal documents.  *See* SILs Guidance at 19.  It is also *not necessary* for a permitting decision – permitting authorities are free to completely ignore it.  *See id.* at 19-20.  As such, we find the SILs Guidance does not result in "direct and appreciable legal consequences" as required under prong two of *Bennett*.  *See* 520 U.S. at 178.

Paramount in this decision is the amount of discretion permitting authorities retain after publication of the SILs

14

Guidance.  In *Catawba County*, this Court found an agency memo nonfinal where it did not "impose binding duties on states or the agency. . . . [but] merely clarifie[d] the states' duties under the [CAA] and explain[ed] the process EPA suggests," noting those views were open to revision.  571 F.3d 20, 33-34 (D.C. Cir. 2009).  Similarly, the SILs Guidance imposes no obligations, prohibitions, or restrictions, and "compels action by neither the recipient nor the agency." *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944 (D.C. Cir. 2012); *see also Valero*, 927 F.3d at 536. During this initial information-gathering phase, permitting authorities can choose to reference the values outlined in the SILs Guidance, to develop and justify their own SILs, or even to ignore the Guidance entirely.  *See* SILs Guidance at 19-21. The SILs Guidance explicitly preserves state discretion regarding what degree of modeling or analysis may be necessary for each petition and does not require states to review their programs or take any proactive action in response. *See* SILs Guidance at 3.  The states have not been given "marching orders" and are not expected to "fall in line," *see Appalachian Power Co.*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (finding guidance final where it required state permitting authorities to search for deficiencies in existing programs and to take action if any were found, *id.* at 1022), but retain discretion to utilize the SILs Guidance or maintain the status quo in their individual permitting programs.

Petitioner also points to a line of cases which incorporate the analysis of *Ciba-Geigy*, 801 F.2d 430 (D.C. Cir. 1986), a ripeness case which this Court has described as "complementary" to *Bennett. Reckitt Benckiser, Inc. v. E.P.A.*, 613 F.3d 1131, 1137 (D.C. Cir. 2010).  These cases focus on whether the agency action at issue (usually a preenforcement letter threatening action if the regulated entity does not change a certain behavior) has a practical effect on

regulated parties, even if the action itself has no formal legal force. *See, e.g.*, *CSI Aviation Servs., Inc.*, 637 F.3d at 412 (concluding the agency action was final because it "imposed an immediate and significant practical burden" by forcing the company to choose between conforming to the agency's demand or facing civil and criminal penalties); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("Finality resulting from the practical effect of an ostensibly non-binding agency proclamation is a concept we have recognized in the past."); *Clean Air Council v. Pruitt*, 862 F.3d 1, 4, 7 (D.C. Cir. 2017) (finding a stay of portions of a rule final agency action because it relieved regulated parties of any obligation to comply with monitoring requirements, eliminating the threat of civil penalties, citizens' suits, fines, and imprisonment for noncompliance). However, the SILs Guidance is nonfinal even if we look to this line of cases and considerations as it does not subject regulated entities to the same level of practical consequences present in *Ciba-Geigy* or *CSI Aviation*. *See also Valero*, 927 F.3d at 537 ("We need not explore the potential tension between those lines of decisions because the EPA document is nonfinal even if we take into account its practical consequences.").

As in *Valero*, EPA is not using the SILs Guidance to "flex[] its regulatory muscle" or to present regulated entities with the "painful choice between costly compliance and the risk of prosecution at an uncertain point in the future[.]" *CSI Aviation Servs.*, 637 F.3d at 412-13. Nor does the SILs Guidance "impose obligations by chicanery – disclaiming legal force and effect but nonetheless 'read[ing] like a ukase.'" *Valero*, 927 F.3d at 537 (quoting *Appalachian Power*, 208 F.3d at 1023). The SILs Guidance by itself does not expose any regulated entity to the possibility of an enforcement action or to enhanced fines or penalties. *See Sackett*, 566 U.S. at 126; *see also National Mining Ass'n*, 758

F.3d at 252 (holding that a guidance statement was not final action, in part, because "[a]s a matter of law, state permitting authorities . . . may ignore EPA's . . . Guidance without facing any legal consequences[]").  The document merely provides guidance that permitting authorities may use on a "case-by-case" basis.  SILs Guidance at 19.  As such, we find it does not beget the same practical consequences as the targeted pre-enforcement letters in *CSI Aviation* and *Ciba-Geigy* and is not final agency action under prong two of *Bennett*.

Since a finding that the second prong of *Bennett* is lacking is enough to render an agency action non-final, we need not reach Petitioner's arguments under the first prong.  *See Soundboard*, 888 F.3d at 1267; *see also Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016).  The     petition     is     hereby     dismissed.

WILKINS, *Circuit Judge*, concurring: In order to prevent a patchwork of regional interpretations of nationally applicable agency actions, section 307(b)(1) of the CAA Amendments of 1977 vested exclusive jurisdiction in the Court of Appeals for the District of Columbia Circuit to review all final EPA actions of nationwide consequence, whether such action is pursuant to specifically enumerated provisions of the CAA, or pursuant to "any other nationally applicable regulations promulgated, or final action taken, by the Administrator under [the Act]." *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 590 (1980) (quoting 42 U.S.C. § 7607(b)(1) and citing H.R. 6161, 95th Cong., 1st Sess. (1977)) (alteration in original). As we stated long ago, "[o]ur jurisdiction extends to 'any . . . nationally applicable . . . final action taken by' the EPA 'Administrator.'" *Appalachian Power Co.*, 208 F.3d 1015, 1020 n.10 (D.C. Cir. 2000) (quoting 42 U.S.C. § 7607(b)(1)) (emphasis added) (alterations in original); *see also Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 634 (D.C. Cir. 2019) (stating section 307(b)(1) "confers jurisdiction . . . in this court for, *inter alia*, final action of the Administrator that is 'nationally applicable.'" (quoting 42 U.S.C. § 7607(b)(1))); *Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 642 (D.C. Cir. 2019). In contrast, the CAA Amendments confined the jurisdiction of the regional courts of appeals to review of local or regional actions, whether such action is pursuant to specifically enumerated provisions of the CAA, or pursuant to "any other final action of the Administrator under [the CAA] which is locally or regionally applicable." 42 U.S.C. § 7607(b)(1)); *see also* H.R. Rep. No. 95–294, at 323-24 (1977).

There is no question here that the SILs Guidance is "nationally applicable," *id.* § 7607(b)(1), as the Guidance was

distributed for use nationwide, and it states "EPA believes that the application of these SILs in the manner described below *would be sufficient in most situations* for a permitting authority to conclude that a proposed source will not cause or contribute to a violation of . . . PSD increments," SILs Guidance at 3 (emphasis added). Furthermore, even though its use is optional, the SILs Guidance was expressly developed "to promote national consistency." *Id.* at 13; *see also id.* at 15 ("Having a national SIL value promotes consistency in implementation and prevents possible confusion or arbitrary choices that may arise with highly localized SIL values . . . .").

The Sierra Club contends that the SILs Guidance violates the CAA because it "allow[s] construction of a proposed source if the source shows its individual air pollution impact is less than a SIL, without looking at whether a NAAQS or increment violation will actually occur or worsen." Pet'r's Opening Br. at 20. We cannot reach that argument today, because the SILs Guidance presents a curious form of agency action – nationally applicable guidance that is not final agency action at the time of publication but that may be relied upon later to justify a permitting decision, which is final agency action. But when that future permitting decision is made, the question naturally will arise – which court has jurisdiction to review it? The answer of course depends upon the precise circumstances of the permit and the challenge, but I write separately to point out that if such review involves resolving a substantive challenge to the validity of the SILs Guidance similar to the one Sierra Club presses here, then review must occur in this Court.

The EPA is certainly free to make nationally applicable policy, such as the SILs Guidance, via adjudication

of individual permits rather than in one fell swoop via a rulemaking proceeding. While agencies usually promulgate policies through binding guidance or regulations, it is long settled that an agency may also choose to enact interpretations of law or make administrative policy through adjudication. *See SEC v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 201-03 (1947); *see also Hoopa Valley Tribe v. FERC*, 629 F.3d 209, 212 (D.C. Cir. 2010) (upholding agency policy adopted in an adjudication); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 123 (D.C. Cir. 2008) (stating an agency may make "policy choices through adjudication" and give the decision retroactive effect). "Most norms that emerge from a rulemaking are equally capable of emerging (legitimately) from an adjudication, and accordingly agencies have very broad discretion whether to proceed by way of adjudication or rulemaking." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 536 (D.C. Cir. 2007) (internal quotation marks and citations omitted).

Although administrative law in the adjudicative context softens the formalism of strict *stare decisis*, an agency's adjudicative body engaged in policymaking must still adhere to its precedent in deciding cases. *See Hatch v. FERC*, 654 F.2d 825, 834-35 (D.C. Cir. 1981). Presumptively bound by precedent, an agency may, within the realm of its statutory authority, change the established law and apply newly created rules "in the course of an adjudication, so long as the agency acts pursuant to delegated authority, adopts a permissible construction of the statute, and adopts a rule that is not arbitrary and capricious." *Consolidated Edison Co. of New York, Inc. v. FERC*, 315 F.3d 316, 323 (2003); *see Hatch*, 654 F.2d at 835-37; *see also NAACP v. FCC,* 682 F.2d 993, 998 (D.C. Cir. 1982). While eschewing a doctrine of binding precedent, administrative law retains a balanced requirement of consistency dictating that, in general, like circumstances

should be treated alike. *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 770-71 (Black, J., concurring) ("If the agency decision reached under the adjudicatory power becomes a precedent, it guides future conduct in much the same way as though it were a new rule promulgated under the rule-making power."). Thus, an agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books," but it may change policy if such change is permitted by statute and the agency articulates "good reasons" for doing so. *FCC. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The Environmental Appeals Board ("EAB") is the agency body that could establish EPA policy with respect to the SILs Guidance. Established by regulation in 1992, the EAB creates a body of precedent upon which it, hearing officers, EPA, and the regulated community rely. *See* 78 Fed. Reg. 5281, 5284 (Jan. 25, 2013) ("Practitioners before the [EAB] in permit appeals currently are guided by Board precedent, standing orders of the Board, and the Board's Practice Manual."); *see also* Stanley Abramson, et. al., 1 L. OF ENVTL. PROT. § 9:106 (2019). Pursuant to that mission, the EAB is tasked with, *inter alia*, discretionary review of individual PSD permitting decisions. *See* 40 C.F.R. § 124.19(a). In the over 40 states that implement the PSD program in accordance with their approved SIPs, applicable EPA regulations require notice, a comment period, and a public hearing on applications for new sources of air pollution. *Id.* §§ 124.10-.12. Upon final approval of an application by a state permitting authority, participants in the comment process may petition the EPA Administrator for administrative review through the EAB. *Id.* § 124.19(a). EAB decisions are final agency actions published in the Federal Register, *id.* § 124.19(l); therefore review of EAB decisions on "locally or regionally applicable" permit appeals

are heard by the appropriate regional court of appeals, 42 U.S.C. § 7607(b)(1), while review of "nationally applicable" permit appeals must be heard in this Court, *id*. Because the regulations allow a petitioner to challenge "any condition of any [specified] permit decision," 40 CFR § 124.19(a), which the EAB has construed "to include . . . the permit decision in its entirety, whether based on alleged substantive or procedural defects," 78 Fed. Reg. at 5284, the EAB could potentially rule upon a substantive challenge to the SILs Guidance similar to the one asserted here by the Sierra Club.

Should an EAB decision pass on such a substantive challenge to the SILs Guidance, review must be held in this Court, since the SILs Guidance is by its nature nationally applicable, EAB decisions are precedent for future parties and regulated entities, and the EAB decision would be, at a minimum, persuasive authority for every future permit issuance in the nation. *See Appalachian Power*, 208 F.3d at 1021 n.10 ("Our jurisdiction extends to 'any . . . nationally applicable . . . final action taken by' the EPA." (quoting 42 U.S.C. § 7607(b)(1)) (alterations in original). As the Supreme Court made clear in *Harrison*, Congress intended for nationally applicable final agency action under the CAA to be heard here, 446 U.S. at 590, and it would not make sense to have various state courts or regional courts of appeals issue potentially inconsistent rulings on substantive challenges to the national SILs Guidance or review of permitting decisions based upon the Guidance.

And adjudication by the EAB is not the only forum in which EPA might take nationally applicable final action with respect to the SILs Guidance. For instance, EPA's Administrator "may determine that [an] otherwise locally or regionally applicable action has nationwide scope or effect and publish his finding," requiring review in this Court.

*Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019) (citing 42 U.S.C. § 7607(b)(1)). Additionally, although the majority of PSD permitting decisions are made by the relevant state authorities, in localities without PSD programs in their state implementation plans, EPA itself manages the PSD program and issues preconstruction permits. *See generally* 40 C.F.R. § 52.21; *Puerto Rican Cement Co. v. EPA*, 889 F.2d 292, 294 (1st Cir. 1989) (reviewing a PSD preconstruction permit issued by EPA directly). Whatever the administrative context, the pathway appears the same – should EPA, in the course of issuing an individual permitting decision, an appeal to the EAB, or through another method, take final agency action approving of, passing on, or otherwise ruling on the substance of the SILs Guidance in a nationally applicable manner, review should be had in this Court under section 307(b)(1), just as Congress commanded.

RANDOLPH, *Senior Circuit Judge*, concurring: I concur in the majority opinion. As to Judge Wilkins' separate concurring opinion, I see no reason to decide what we would decide if only the case before us were a different case.